51 So.3d 179 (2010)
Ralph WARE
v.
GEMINI INSURANCE COMPANY.
No. 10-594.
Court of Appeal of Louisiana, Third Circuit.
November 24, 2010.
Rehearing Denied January 12, 2011.
Joseph Payne Williams, Williams Family Law Firm, LLC, Natchitoches, LA, for Plaintiff/Appellee, Ralph Ware.
*180 James Alex Mijalis, Lunn, Irion, Salley, Carlisle & Gardner, Shreveport, LA, for Defendant/Appellant, Gemini Insurance Company.
Court composed of ULYSSES GENE THIBODEAUX, Chief Judge, SYLVIA R. COOKS, and ELIZABETH A. PICKETT, Judges.
THIBODEAUX, Chief Judge.
Appellant, Gemini Insurance Company (Gemini), asserts that the trial court erred by granting a summary judgment in favor of Ralph Ware and by denying a summary judgment in its favor. The trial court found that Ware's employer did not properly select the uninsured/underinsured motorist (UM) coverage that is lower than the limit of its liability insurance policy. For the following reasons, we affirm.

I.

ISSUE
We shall consider whether the employer properly selected a UM coverage that is lower than the limit of its liability policy where the insurance agent entered the lower limit without a discussion with the insured, but the employer initialed, signed, and dated the form.

II.

FACTS
Ware, a driver of a tractor trailer rig, was in an accident while in the course and scope of his employment. The other driver had a liability coverage with a minimum limit that was insufficient to compensate Ware for his injuries.
Gemini provided liability coverage to Ware's employer with the limit of $1,000,000.00. Gemini tendered $50,000.00 to Ware, claiming that this amount was the limit of the UM coverage Ware's employer chose. Ware, on the other hand, argued that his employer did not properly select the lower coverage, and, therefore, the $1,000,000.00 limit should apply.
The following are the circumstances surrounding the selection of the $50,000.00 UM coverage. Randall Murphy, on behalf of Ware's employer, signed an Uninsured/Underinsured Motorist Bodily Injury Coverage Form (UM form). This form lists five UM coverage options an insured may choose from by initialing each choice: (1) allows the insured to select a UM coverage with the same limit as the liability policy; (2) allows the insured to select a UM coverage with a limit that is lower than the liability limit. This choice also has two sub-options. The first suboption allows the insured to enter the amount of the limit per each person, and the second sub-option allows the insured to enter the amount of the limit per each accident; (3) allows the insured to select an economic-only UM coverage with the same limit as the liability coverage; (4) allows the insured to select an economic-only UM coverage but with the limit lower than the liability coverage. This option, like the second option, has two sub-options that allow the insured to enter the amount of the limit per each person or per each accident; and, (5) allows the insured to reject the UM coverage entirely.
On January 22, 2007, Randall Murphy, on behalf of Ware's employer, initialed choice number two and signed the form. The insurance agent, Dorothy Ladd, who has been working for the insurance industry for over thirty years, wrote $"50,000" in the sub-option "each person" and in the sub-option "each accident."
According to Ladd, after she faxed this form to the underwriter, she received a phone call from the underwriter's assistant, Laurie Bonds, who told Ladd that *181 she needed to redo the UM form. Ladd testified: "[s]he [Bonds] told me exactly what was wrong with the form and that it had to be redone" because "we don't write in anything under the each person." (Emphasis added).
Thus, on January 26, 2007, another UM form was executed. Again, Ladd wrote $"50,000," but solely in the "each accident" sub-option. Then, Murphy initialed option number two and signed the form. There is no dispute that Ladd and Murphy did not discuss the amount of the limit. Likewise, there is no dispute that Murphy initialed choice number two and signed the form after Ladd entered the amount of the limit.
Both parties motioned for summary judgment on the issue of the UM coverage limit. The trial court granted Ware's motion and denied Gemini's motion. The trial court concluded that the issue in this case was "whether the insured has to personally fill in the amount of the reduced coverage, should he select a lower limit, or whether it is satisfactory for the insurance agent to fill in the amount and the insured only initial it." The trial court reasoned that the form the Commissioner of Insurance promulgated and the Insurance Code mandated commanded the insured to fill out the form. Then, the court noted the pronouncements in Duncan v. U.S.A.A. Ins. Co., 06-363 (La. 11/29/06), 950 So.2d 544, that the expression of a desire not to have a UM coverage does not necessarily constitute a valid rejection if the rejection does not meet the formal requirements of the law. The trial court concluded that because Murphy did not physically write in the amount, the selection of the lower limit was invalid.
Gemini appealed and filed an application for supervisory review arguing the trial court erred by granting Ware's motion and by denying its motion for summary judgment. The appeal and the writ have been consolidated.

III.

STANDARD OF REVIEW
Appellate courts review summary judgments de novo. Guilbeaux v. Times of Acadiana, Inc., 96-360 (La.App. 3 Cir. 3/26/97), 693 So.2d 1183, writ denied, 97-1840 (La. 10/17/97), 701 So.2d 1327. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).
Because the denial of a motion for summary judgment is an interlocutory ruling from which no appeal may be taken, the only practical remedy available is to request the appellate court's exercise of its supervisory jurisdiction to review the propriety of this ruling. Louviere v. Byers, 526 So.2d 1253 (La.App. 3 Cir.), writ denied, 528 So.2d 153 (La.1988).

IV.

LAW AND DISCUSSION
UM insurance is provided for by statute that embodies a strong public policy to give full recovery for the automobile accident victims. Duncan, 950 So.2d 544 (citing Roger v. Estate of Moulton, 513 So.2d 1126 (La.1987); A.I.U. Ins. Co. v. Roberts, 404 So.2d 948 (La.1981); Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992); Henson v. Safeco Ins. Cos., 585 So.2d 534 (La.1991); Hoefly v. Gov't Employees Ins. Co., 418 So.2d 575 (La.1982)). "Thus, under the UM statute, the requirement of UM coverage is an implied amendment to any automobile liability policy, *182 even when not expressly addressed, as UM coverage will be read into the policy unless validly rejected." Id. at 547 (citations omitted). The
rejection, selection of lower limits, or selection of economic-only coverage shall be made only on a form prescribed by the commissioner of insurance. The prescribed form shall be provided by the insurer and signed by the named insured or his legal representative. . . . A properly completed and signed form creates a rebuttable presumption that the insured knowingly rejected coverage, selected a lower limit, or selected economic-only coverage.
La.R.S. 22:1295.
The UM statute must be liberally construed. Duncan, 950 So.2d 544 (citing Daigle v. Authement, 96-1662 (La. 4/8/97), 691 So.2d 1213; Roger, 513 So.2d 1126). This requires a strict interpretation of the exceptions to coverage. Id. (citing Roger, 513 So.2d 1126). The insurer bears the burden of proving that the insured rejected the UM coverage or selected a lower limit. Id. (citing Tugwell, 609 So.2d 195).
The form the Commissioner prescribed involves six tasks:
(1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident; (3) printing the name of the named insured or legal representative; (4) signing the name of the named insured or legal representative; (5) filling in the policy number; and (6) filling in the date.
Duncan, 950 So.2d at 551. If the insurer uses the prescribed form and "makes certain that it is properly completed and signed, then the insurer receives a presumption that the insured's waiver of coverage was knowing." Id. at 552.
While we affirm the trial court's judgment, we disagree with its reasoning. The issue in this case is not whether the insured has to personally fill in the amount of the reduced coverage but whether the selection of the lower amount of coverage by someone other than the insured invalidates the properly filled out form.
Here, there is no dispute that the insurance agent did not discuss with the insured the limit of the lower coverage. There is no dispute that the insurance agent unilaterally filled in the amount of the limit. This is not the case where the agent performed a clerical task of filling in the amount after a discussion in which the insured selected the amount of the coverage. Instead, the agent selected and entered the amount, thereby effectively vitiating the insured's choice.
Murphy initialed and signed the form in which Ladd selected and filled in $50,000.00 as the limit of the UM coverage in both the "per person" and "per accident" slots. Murphy also initialed and signed the "corrected" form. He did so not because he felt that the previous form incorrectly reflected his desires and intentions, but because it was not, based on Ladd's testimony, the way the insurance company did business. This circumstance provides additional support to our conclusion that Murphy did not understand and did not knowingly select the amount of the UM coverage.
The underwriter assistant's statement, based on Ladd's testimony, that "we don't write in anything under the each person" further demonstrates who made the selection of the UM coverage in this case. (Emphasis added). From this statement, it appears that even if an insured wanted to have a "per person" coverage, the insured would not have been able to select it.
*183 Finally, Ladd testified that in some cases the agent fills out the form outside the insured's presence altogether and sends the filled-out form to the customer for signature.
We are cognizant of the opinion from our sister jurisdiction in Taylor v. U.S. Agencies Cas. Ins. Co., 09-1599 (La.App. 1 Cir. 4/7/10), 38 So.3d 433. The court held that the insured failed to rebut the presumption that he knowingly selected the lower limit of the UM coverage. There, as in this case, the insurance agent filled out the blanks on the form selecting the lower limit of the UM coverage. The insured initialed and signed the filled out form. Nevertheless, the opinion is silent as to who selected the lower coverage.
Here, it is undisputed that the insurance agent selected the amount. While the form was properly filled out thereby creating a rebuttable presumption that Murphy knowingly and voluntarily selected the lower UM coverage, the undisputed evidence in this case is sufficient to rebut that presumption.
Although the insured does not need to perform the clerical task of filling in the numbers, it must be the insured who makes the selection of the amount of the limit. It is unclear from the opinion in Taylor who made the selection of the amount. The court simply concluded that the insured failed to rebut the presumption.
To the extent that one may infer from Taylor that the insured only needs to initial and sign the pre-filled-out form for there to be an effective selection of the lower limit, we respectfully disagree. Under this interpretation the presumption becomes irrebuttable.
Furthermore, the supreme court explicitly addressed this issue in Duncan. It is not enough to simply check one of the options and sign the form. Duncan, 950 So.2d 544. If the insured wants the UM coverage to be lower than the policy limit, then the first two tasks are: "(1) initialing the selection or rejection of coverage chosen; (2) if limits lower than the policy limits are chosen (available in options 2 and 4), then filling in the amount of coverage selected for each person and each accident . . . ." Id. at 551. Thus, if the insured chooses option two or four, task number two requires: (1) the insured to select the amount of the limit; and, (2) to enter the amount of the limit selected. Unlike the form options one, three, and five, options number two and four require the insured to perform, in addition to initialing and, thereby, selecting the option, an additional act, i.e., to choose a limit and enter it on the form. While someone other than the insured may perform the clerical task of entering the amount on the form, only the insured must decide what that amount needs to be.
Initialing the option fulfills task number one. Entering the amount of the selected limit partially fulfills task number two. For the second task to be complete, the insured must select the amount of the limit. The insured cannot select the option of the lower limit by initialing it without selecting "the exact limits for each person and each accident." Id. at 552.
Acquiescence to the insurance agent's selection is not the same as making the selection of the limit. An insurance agent is perceived to have greater knowledge and bargaining power. Thus, the agent may consciously or unconsciously influence the insured's choice, and this may cast serious doubt on the voluntariness of the choice. Moreover, an agreement where an agent selects and enters the limit and then submits the form to the customer for signature without a discussion of the limit appears more like a contract of adhesion *184 than a bargained-for exchange the form contemplates.[1]
Considering the reasons above as well as the statutory policy that favors coverage and the insurer's burden to show a valid selection of the lower limit, this court concludes that the trial court did not err by granting Ware's motion for summary judgment and by denying Gemini's motion.

V.

CONCLUSION
Summary judgment in favor of Ralph Ware is affirmed. For the reasons expressed above, the trial court's denial of Gemini Insurance Company's motion for summary judgment is affirmed, and Gemini Insurance Company's writ is denied. Costs of this appeal are assessed to Gemini.
AFFIRMED.
PICKETT, J., dissents and assigns written reasons.
I would find that Mr. Ware's employer executed a valid UM coverage form which selected the lower coverage limit of $50,000.00. I do not find that the evidence submitted rebuts the presumption that the lower coverage limits were knowingly and voluntarily selected. I would reverse the trial court's grant of summary judgment in favor of Mr. Ware and the denial of the summary judgment motion filed by Gemini. I respectfully dissent.
NOTES
[1] Each of the five options in the form Commissioner prescribed and Murphy signed, begins with the number of the option and a space for the initials. Then, the first four options have the following language: "I select UMBI [UM Bodily Injury] Coverage which will . . . ." The fifth option's language is: "I do not want UMBI Coverage."